Filed 12/13/21  P. v. Sheard CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B308523 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA039399-01) |
| v. | |
| NATHAN SHEARD, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los County, Stephen A. Marcus, Judge.  Reversed and remanded.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Kristen J. Inberg and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Nathan Sheard, convicted in 2002 with codefendant David Talmadge, of first degree murder with true findings the murder had been committed during the commission of a residential burglary and robbery, appeals the superior court's denial of his petition for resentencing pursuant to Penal Code section 1170.95[1] without issuing an order to show cause and holding an evidentiary hearing to determine his eligibility for relief.  We agree the superior court erred in holding Sheard's petition was precluded as a matter of law by the jury's felony-murder special-circumstance finding, made more than a decade before the Supreme Court's identification in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) of the factors properly considered to assess whether a defendant was a major participant in an underlying serious felony and had acted with reckless indifference to human life. The superior court also committed prejudicial error by prematurely engaging in factfinding when it determined, as an alternate basis for its denial of the petition, that the record of conviction, viewed in light of the *Banks/Clark* factors, supported the jury's major participant and reckless indifference findings and Sheard, therefore, had failed to make a prima facie showing of his entitlement to relief.  We reverse the order denying Sheard's petition and remand with directions to issue an order to show cause and to conduct further proceedings in accordance with section 1170.95, subdivision (d).

_____

[1]      Statutory references are to this code.

# FACTUAL AND PROCEDURAL BACKGROUND

1. *Sheard's Felony-murder Conviction*

Our opinion affirming Sheard's judgment of conviction (with minor modifications of the sentence) describes the evidence presented at his joint trial with Talmadge for the murder of Sheard's elderly aunt, Gertrude Mills. (*People v. Sheard* (Dec. 3, 2003, B160886) [nonpub. opn.].)

Sheard and Talmadge shared a bedroom in the home of Sheard's father. In March 1999 the three men painted the interior of Mills's house in Altadena. During the project Sheard discovered a collection of guns in a hall closet.

On April 29, 1999 Sheard's father heard Sheard, who was speaking on the telephone to Talmadge, say, "What is she going to give you that for? What does she want to loan you that for? Don't make me come all the way up there if she's not going to give it to you." Sheard then left the house, telling his father he was going to meet Talmadge at Mills's house. Sheard and Talmadge returned home after midnight.

The following day Sheard was driving Mills's automobile. At the home of a neighbor Sheard opened the car's trunk, which contained shotguns and rifles. Sheard said he had obtained the firearms from an old lady whose husband had passed away. Talmadge, who had arrived on foot, Sheard and the neighbor then drove to the home of another man, where Talmadge sold two of the shotguns.

Several days later Sheard, still driving Mills's automobile, failed to stop at a stop sign on his way to a car wash. A Burbank police officer approached Sheard at the car wash and asked for his license, registration and proof of insurance. Sheard said he did not have a driver's license and told the officer the car

belonged to a friend. The officer performed a pat search and asked for permission to search the car, which Sheard granted. The officer found a receipt from an automobile mechanic made out to Mills. A second officer, who had arrived to provide backup, discovered through a check of state records that the car belonged to Mills. Questioned about Mills, Sheard said she was his aunt, lived in Pasadena and was "on a little vacation." Sheard was arrested for driving without a license and taken into custody.

Following Sheard's arrest Los Angeles County Sheriff's deputies went to Mills's home, where they found her in the bathtub, bound and fully clothed, submerged in water with a portable heater on top of her body. An autopsy revealed Mills had sustained head injuries from multiple strikes with a blunt object and multiple rib fractures consistent with having been repeatedly kicked or stomped. The report indicated the blows may not have been immediately fatal; Mills may have drowned after being placed in the bathtub with the weight of the heater on her chest.

One of Talmadge's fingerprints was found on a glass mug in the residence. Partially smoked cigarettes with Talmadge's and Sheard's DNA were found in the house. The gun collection was missing. A safe in the kitchen was empty. In a search of Sheard's father's home, officers found a pair of pants and a boot in the room Sheard and Talmadge shared that were stained with Mills's blood. A ball peen hammer, normally kept in the room, was not found during the search.

The jury at Sheard and Talmadge's joint trial convicted both men of first degree murder, first degree residential burglary and first degree residential robbery. The jury found true the special circumstance allegations the murder had occurred during

4

the commission of the burglary and robbery. The jury also found true the allegation Sheard and Talmadge personally used a deadly and dangerous weapon in the commission of the murder, but found that allegation not true as to the burglary and robbery. Each man was sentenced to an indeterminate state prison term of life without parole, plus one year for the weapon enhancement. (Sentences on the burglary and robbery counts were stayed pursuant to section 654.)

We affirmed the judgments of conviction on appeal, as modified to correct minor sentencing errors,[2] holding any error in the admission of Sheard's statement during the traffic stop was harmless beyond a reasonable doubt in light of the "overwhelming evidence of Sheard's guilt," which, we explained, included that, when Sheard was questioned at the car wash, printed in the dust on Mills's car was the statement, "Gertrude, I appreciate you leaving me a car"; Sheard's DNA was found on a cigarette on the floor next to the sofa where Mills had bled profusely; and Sheard and Talmadge were selling guns stolen from Mills's house shortly after the murder. In a footnote we added, "The lack of conclusive evidence as to which defendant was the actual killer does not make the admission of Sheard's patrol-car statements prejudicial, as Sheard asserts. The People did not argue the statements were evidence that Sheard was the

---

[2] We modified the judgment to strike one-year sentence enhancements for use of a deadly weapon on the robbery and burglary convictions that had been improperly imposed and stayed because the jury had found the allegations not true and struck the parole revocation fine because Sheard and Talmadge had been sentenced to life without parole.

5

actual killer, only that his lies to the police were evidence of unspecified 'guilt.'" (*People v. Sheard*, *supra*, B160886, fn. 6.)

We also rejected Sheard and Talmadge's argument the evidence did not support the jury's finding they had murdered Mills in the commission of the burglary and robbery, holding, "[T]he record amply supports an inference Talmadge and Sheard formed the intent to steal Mills's property before they killed her, thus justifying the special circumstances finding."

2. *Sheard's Petition for Resentencing*

On April 15, 2019 Sheard, representing himself, filed a petition for resentencing under section 1170.95 and requested the court appoint counsel to represent him in the resentencing proceedings. Sheard checked several boxes on the printed form petition to establish his eligibility for resentencing relief, including the boxes stating he had been convicted under a felony-murder theory and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437).[3] The superior court appointed counsel to represent Sheard.

The prosecutor filed a response to the resentencing petition arguing Senate Bill 1437 was unconstitutional and a supplemental brief contending Sheard was ineligible for resentencing under section 1170.95 because he was the actual

---

[3]     Sheard did not check the boxes next to the statements he did not, with intent to kill, aid or assist the actual killer and he was not a major participant or did not act with reckless indifference to human life during the course of the underlying felony. Neither the prosecutor nor the superior court attached any significance to this omission, nor do we.

killer, had the intent to kill or was a major participant who had acted with reckless indifference to human life during the underlying felonies. The supplemental response attached this court's opinion affirming Sheard's conviction.

Sheard's appointed counsel filed a response to the prosecutor's constitutional analysis and two supplemental briefs arguing Sheard had made a prima facie showing of his eligibility for resentencing relief.

At a hearing on September 25, 2020, after stating it had reviewed all the material submitted by counsel, the court declined to issue an order to show cause and denied the petition. The court, accepting the reasoning of one of two lines of conflicting authority, ruled, "[A] habeas petition must precede the filing of a section 1170.95 petition when a pre-*Banks* and *Clark* special circumstance is found true." As an alternate basis for its ruling, the court also found, "taking into account the jury's finding and then my own independent review of the record in this case," Sheard was a major participant in the underlying felonies who had acted with reckless indifference to human life and, accordingly, had failed to make a prima facie showing of his entitlement to resentencing relief.

Sheard filed a notice of appeal on October 5, 2020. On October 8, 2020 the court filed a 10-page memorandum of decision. In its memorandum the court explained, "[T]he jury's special circumstance finding that Petitioner was a major participant who acted with reckless indifference to life shows that Petitioner could still be convicted of felony murder under the new definitions in SB 1437. Accordingly, this means that Petitioner cannot make a *prima facie* case that he is eligible for resentencing." After again explaining there were two conflicting

7

lines of authority, the court then ruled, "Penal Code section 1170.95 is not the proper vehicle to attack the special circumstances findings by a jury in a felony murder case, based on the cases *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). Instead, Petitioner must file a petition for a writ of *habeas corpus* in order to challenge the validity of the felony murder special circumstance finding by the jury." Finally, the court reviewed the *Banks/Clark* factors and concluded, "Petitioner does meet the requirements of a major participant, because he helped plan the robbery/burglary of his aunt Gertrude Mills, and was present for the entire robbery and murder." In addition, the court stated, "While Petitioner has denied he acted with reckless indifference to life, an examination of the factors in *Clark* overwhelmingly support that Petitioner acted in reckless indifference to life."

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e)(3); see *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have

been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivision (c), requires the court to appoint counsel to represent the petitioner, if requested;[4] to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and to determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (See *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, "the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause. . . . However, if the record, including the court's own documents, contain[s] facts refuting the allegations

---

[4] As amended by Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), effective January 1, 2022, the requirement to appoint counsel is set forth in new subdivision (b)(3) of section 1170.95, rather than subdivision (c).

made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Id.* at pp. 970-971, internal quotation marks omitted.)

If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)[5] The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens. (See *Gentile*, *supra*, 10 Cal.5th at pp. 853-854.)

> 2. *Section 189, Subdivision (e)(3), and the Narrowed Felony-murder Rule*

At the time of Sheard and Talmadge's trial section 189 permitted a conviction for felony murder by imputing malice to a participant in an inherently dangerous felony, including residential burglary and robbery, that resulted in a homicide. (See *People v. Chun* (2009) 45 Cal.4th 1172, 1184.) As amended by Senate Bill 1437, section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of

---

[5] As amended by Senate Bill No. 775, section 1170.95, subdivision (d)(3), clarifies that, "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

10

murder except under the revised felony-murder rule as set forth in section 189, subdivision (e), which requires proof of specific facts relating to the defendant's individual culpability: The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2," the felony-murder special-circumstance provision (§ 189, subd. (e)(3)).

The overlapping factors for assessing whether a defendant was a major participant in an underlying serious felony and acted with reckless indifference to human life for purposes of section 190.2, subdivision (d), and thus for new section 189, subdivision (e)(3), were identified by the Supreme Court in *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522, and reiterated most recently in *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*). As to whether the defendant was a major participant in one of the specified felonies, the *Banks* Court listed the following factors: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did

11

the defendant do after lethal force was used?" (*Banks*, at p. 803, fn. omitted.)

As to whether a defendant acted with reckless indifference to human life, the Supreme Court has enumerated the following factors: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins, supra*, 9 Cal.5th at p. 677; accord, *Clark, supra*, 63 Cal.4th at pp. 618-622.) "'"[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient."'" (*Scoggins*, at p. 677; accord, *Banks*, *supra*, 61 Cal.4th at p. 803.)

As the *Scoggins* Court explained, "Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'" (*Scoggins, supra*, 9 Cal.5th at p. 676; accord, *Banks*, *supra*, 61 Cal.4th at p. 808 ["[a]wareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient"; reckless indifference to human life requires "knowingly creating a 'grave risk of death'"].) "Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.'" (*Scoggins*, at pp. 676- 677, quoting *Clark, supra*, 63 Cal.4th at p. 617.)

3. *The Superior Court Erred in Denying Sheard's Petition Without Issuing an Order To Show Cause*
    a. *The jury's pre-*Banks*/*Clark *felony-murder special-circumstance finding does not preclude relief as a matter of law*

In *People v. Harris* (2021) 60 Cal.App.5th 939, 954-958, review granted April 28, 2021, S267802, we rejected the argument a jury's pre-*Banks/Clark* felony-murder special-circumstance finding precludes relief under section 1170.95 absent a successful challenge to the evidentiary support for the finding through a petition for writ of habeas corpus, the principal ground for the superior court's denial of Sheard's petition for resentencing. As we explained, a section 1170.95 petition contests the murder conviction, not the special-circumstance finding. (*Harris*, at pp. 956-957; see *People v. York* (2020) 54 Cal.App.5th 250, 260, review granted Nov. 18, 2020, S264954 ["section 1170.95 permits a petitioner to challenge a *murder conviction*. If that challenge succeeds, then under section 1170.95, subdivision (d)(3), the special circumstance is vacated as a collateral consequence"].) Sheard's petition was made possible by Senate Bill 1437's narrowing of the felony-murder exception to the malice requirement for murder, not the clarifications in *Banks* and *Clark* of the elements of the special circumstance finding. (See § 1170.95, subd. (a)(3) [allowing petition if "the petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019"]; *York*, at p. 261 ["[w]hat permits a defendant convicted of felony murder to challenge his or her murder conviction based on the contention that he or she was not a major participant in the underlying felony who acted with reckless indifference to human life, are the changes Senate

13

Bill 1437 made to sections 188 and 189, and in particular the addition of section 189, subdivision (e)(3), not the rulings in *Banks* and *Clark*"].)  The Attorney General has presented no persuasive reason for us to modify our view on this issue.[6]

Similarly, although Sheard's jury was instructed it had to find he had been a major participant in the residential burglary and robbery that led to the victim's death while acting with reckless indifference to human life to find the felony-murder special-circumstance allegations true, the elements now found in section 189, subdivision (e)(3), as we also held in *People v. Harris*, *supra*, 60 Cal.App.5th at page 957, review granted, such a pre-*Banks*/*Clark* finding, without more, does not preclude relief under section 1170.95.  (See *Scoggins*, *supra*, 9 Cal.5th at pp. 673-674 ["Where a decision clarifies the kind of conduct proscribed by a statute, a defendant whose conviction became final before that decision 'is entitled to post-conviction relief upon a showing that his [or her] conduct was not prohibited by the statute' as construed in the decision.  [Citation.]  'In such circumstances, it is settled that finality for purposes of appeal is no bar to relief, and that habeas corpus or other appropriate extraordinary remedy will lie to rectify the error'"]; *People v. Secrease* (2021) 63 Cal.App.5th 231, 256, review granted June 30, 2021, S268862 ["Because the changes made to section 189 prevent a defendant from being convicted of murder solely for his participation in the

---

[6]    Whether a felony-murder special-circumstance finding made before *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522 precludes a defendant from making a prima facie showing of eligibility for relief under section 1170.95 is pending before the Supreme Court in *People v. Strong*, review granted March 10, 2021, S266606.

offense without findings of major participation and reckless indifference to human life, we conclude that a jury's pre-*Banks* and *Clark* special-circumstance determination cannot, by itself, defeat the allegations of Secrease's petition as a matter of law. There must also be a judicial determination of the sufficiency of the evidence to support that determination, and Secrease is entitled to have it made in a section 1170.95 proceeding—under current law"]; *People v. York*, *supra*, 54 Cal.App.5th at p. 262, review granted ["a pre-*Banks* and *Clark* special circumstance finding—necessarily made on the basis of our former, and significantly different, understanding of what the terms 'major participant' in the underlying felony and 'reckless indifference' to human life meant—does not preclude relief under section 1170.95 as a matter of law"]; *People v. Law* (2020) 48 Cal.App.5th 811, 825, review granted July 8, 2020, S262490 ["the trial court erred by concluding the special circumstance finding, on its own, rendered Law ineligible for relief—that is, the court erred by failing to determine whether Law qualified as a major participant who acted with reckless indifference to human life under *Banks* and *Clark*"]; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1180, review granted June 24, 2020, S262011 [because no court has affirmed the special circumstance findings at issue post-*Banks* and *Clark*, "[t]here is therefore a possibility that Torres was punished for conduct that is not prohibited by section 190.2 as currently understood"]; but see *People v. Nunez* (2020) 57 Cal.App.5th 78, 93, review granted Jan. 13, 2021, S265918 [disagreeing with *York*, *Law* and *Torres*]; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1141-1144, review granted Oct. 14, 2020, S264284.)

b. *The record of conviction does not establish Sheard is ineligible for resentencing as a matter of law*

Although the jury's pre-*Banks/Clark* felony-murder special-circumstance findings, standing alone, do not preclude resentencing under section 1170.95, before it issued an order to show cause, the superior court was authorized to review the record of conviction to determine whether Sheard was ineligible for resentencing under section 1170.95 as a matter of law. (See *Lewis*, *supra*, 11 Cal.5th at p. 971.) As a general matter, however, determining whether an aider and abettor was a major participant in the underlying felony who acted with a reckless indifference to human life is a fact-intensive inquiry, properly performed by the trier of fact following issuance of an order to show cause and an evidentiary hearing. (Cf. *Scoggins*, *supra*, 9 Cal.5th at p. 683 [determining whether a defendant was a major participant in an underlying felony who acted with reckless indifference to life within the meaning of the special-circumstance statute "requires a fact-intensive, individualized inquiry"]; *In re Parrish* (2020) 58 Cal.App.5th 539, 542 [Supreme Court has prescribed "a fact-intensive and individualized inquiry" to determine whether the evidence demonstrates reckless indifference and major participation].)

Here, contrary to the superior court's finding and the Attorney General's argument on appeal, although there is evidence Sheard could still be convicted of murder under the felony-murder rule, the record of conviction does not establish as a matter of law—that is, without weighing the evidence and engaging in factfinding—that he is ineligible for resentencing as a major participant in the residential burglary and robbery who acted with reckless indifference to human life. (See *Lewis*, *supra*,

16

11 Cal.5th at p. 974 ["at the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion'"]; *People v. Duchine* (2021) 60 Cal.App.5th 798, 815 ["the time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima facie stage, at least where the record is not dispositive on the factual issues"].)

As we noted in our opinion on direct appeal, the trial record lacked conclusive evidence as to whether Sheard or Talmadge was the actual killer. Although reasonable inferences about what happened inside the house may be possible, we simply do not know. Both men may have been directly involved in beating Mills and then placing her in the bathtub with a heavy weight on top of her; one may have done the actual killing while the other assisted him; or one of the men may have killed Mills while the other was elsewhere in the house searching for valuables or outside loading the firearms into the trunk of Mills's car.

It may seem beyond dispute that both men were major participants in the burglary and robbery, as defined in *Banks*, *supra*, 61 Cal.4th 788. But the superior court's analysis of the evidence supporting this element, and particularly whether Sheard planned the robbery, one of the *Banks* factors, highlights the factfinding necessary to make this determination. The court reasoned that Sheard "helped plan the robbery/burglary of his aunt Gertrude Mills, and was present for the entire robbery and murder. Both co-defendant Talmadge and Petitioner discussed going over to Mills' house, so she could give them something. Petitioner's father overheard the conversation between his son

and Talmadge regarding the fact they were going to Mills' house to get something.  Finally, the fact that the two men went to see an elderly woman (72 years old) late at night when there would be no witnesses, supports the inference that Petitioner helped plan this robbery and homicide."  As this discussion reveals, there was no admission by Sheard or testimony from a witness that Sheard helped plan the robbery.  Although the conclusion the court reached is reasonable, it is based on inferences—factfinding—from circumstantial evidence.

Similarly, determining the forensic evidence together with circumstantial evidence are sufficient to support a finding beyond a reasonable doubt that, even if not the actual killer or an aider and abettor acting with express malice, Sheard engaged in the underlying felonies with reckless indifference to Mills's life requires a weighing of the evidence—factfinding—not permitted at the prima facie stage of the section 1170.95 process.

## DISPOSITION

The postjudgment order denying Sheard's section 1170.95 petition is reversed.  On remand the superior court is to issue an order to show cause and to conduct further proceedings in accordance with section 1170.95, subdivision (d).


PERLUSS, P. J.

We concur:


SEGAL, J.                    FEUER, J.

18